IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2018

**JENNIFER MARIE LOPEZ v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-435     J. Randall Wyatt, Jr., Judge**

————————————————————

**No. M2017-00841-CCA-R3-PC**

————————————————————

A Davidson County jury convicted Petitioner, Jennifer Marie Lopez, of the Class A felony offense of aggravated child neglect. She was sentenced to serve seventeen years in the Tennessee Department of Correction. The judgment was affirmed on direct appeal. *State v. Jennifer Lopez and Sergio H. Gonzalez*, No. M2014-01701-CCA-R3-CD, 2015 WL 6083216 (Tenn. Crim. App. Oct. 16, 2015), *perm. app. denied* (Tenn. March 24, 2016). Petitioner filed a timely petition for post-conviction relief. Following an evidentiary hearing, the post-conviction court dismissed the petition. Petitioner has appealed, asserting that she is entitled to relief based upon her trial counsel's ineffective assistance of counsel. Following a review of the briefs of the parties and the entire record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

David M. Hopkins, Murfreesboro, Tennessee, for the appellant, Jennifer Marie Lopez.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The victim of the aggravated child neglect is Petitioner's son, who was two years old at the time of the offense. A detailed statement of the facts can be found in this

court's opinion in the direct appeal. *State v. Jennifer Lopez and Sergio H. Gonzalez*, No. M2014-01701-CCA-R3-CD, 2015 WL 6083216 at *1-8 (Tenn. Crim. App. Oct. 16, 2015). In summary, Petitioner's co-defendant was charged in one count with aggravated child abuse by causing a liver laceration and a separate jejunal tear to the victim (N.L.). The jury deadlocked on this count and a mistrial was declared. *Id.* at *6, *8. Co-defendant Gonzalez was convicted as charged in Count 2 which referred to the same conduct as Count 1 but alleged a different theory of aggravated child neglect. *Id.* Petitioner was only indicted in Count 3, which charged her and her co-defendant with aggravated child neglect based upon Petitioner's and Gonzalez's failure "to obtain appropriate medical care for [N.L.'s] worsening medical condition between September 22, 2011[,] and September 23, 2011[,] resulting in [N.L.] going into shock, collapsing, and suffering a separate hypoxic injury to his brain." *Id.* at *6. Petitioner and Gonzalez were both convicted as charged in Count 3.

The serious injuries sustained by N.L. were described in the testimony of Dr. Deborah Lowen, a child abuse pediatrician at Vanderbilt Children's Hospital. N.L. was in a coma and on a ventilator. Lab reports indicated N.L. was near death upon arrival at Vanderbilt Children's Hospital. His liver and pancreas functions were not normal. N.L. was "completely nonresponsive, his pupils were dilated, and his eyes were sunken. *Id.* at *3. N.L. had been in shock for a considerable period of time. He had bruises on his body, and blood flow to his extremities and skin was low. He was only taking one to two breaths per minute. N.L. had a lacerated liver, a perforated small intestine, and an injury to his pancreas. Importantly, Dr. Lowen testified that Petitioner stated that she had noticed N.L.'s abdomen "getting big." Dr. Lowen added that "a 'rigid belly' was a symptom of inflammation in the lining of the abdomen that was caused by the contents of his intestines leaking into his abdominal cavity." *Id.* at *4.

The evidence at trial that supported Petitioner's conviction of aggravated child neglect was summarized as follows in the opinion on direct appeal:

> Defendant Lopez claims that no reasonable jury could have found that she knowingly neglected N.L. by failing to obtain appropriate medical care for his injuries when she spent the day of September 22, 2011, trying to get N.L. to eat and drink, buying him medicine, calling medical providers for advice, and observing N.L.'s condition. Defendant Lopez also asserts that, based on the information she had available and her own observations, she would not have been aware that N.L. would suffer serious bodily injury as a result of her conduct. However, as noted above, child neglect is a nature-of-conduct offense, not a result-of-conduct offense. [      ]. The statute did not require Defendant Lopez to know that N.L. would suffer serious bodily injury; it simply required that she knowingly declined to seek medical treatment for N.L. *See id.* In this case, Defendant Lopez owed a duty to N.L. as his mother. [      ].

- 2 -

She knew that N.L. was sick and that his stomach was "hard" but failed to take him to the doctor for medical treatment until he had collapsed. At that point, N.L. had suffered serious abdominal and brain injuries. Dr. Lowen stated that, while it would have been reasonable to treat N.L.'s symptoms as a virus initially, his condition would have gotten progressively worse as the day went on. According to Dr. Lowen, eventually a prudent caregiver would have recognized that N.L. needed medical attention, regardless of that caregiver's medical knowledge or lack thereof. She also stated that N.L.'s brain injury was a direct result of the delay in seeking medical care. Based on this proof, any rational juror could conclude that N.L.'s condition had continued to worsen despite Defendant Lopez's efforts to treat it and that Defendant Lopez knowingly declined to seek medical attention for N.L. Further, a rational juror could conclude that N.L. was under the age of eighteen and that Defendant Lopez's failure to seek medical attention adversely affected N.L.'s health and welfare, resulting in serious bodily injury. Accordingly, the evidence is sufficient to support Defendant Lopez's conviction for aggravated child neglect.

*State v. Jennifer Lopez and Sergio Gonzalez*, 2015 WL 6083216, at *19.  (citations omitted).

**Post-Conviction Hearing**

Petitioner asserts trial counsel rendered ineffective assistance of counsel by (1) failure to call Petitioner as a witness at trial, and by (2) failure to call certain other witnesses to testify at trial.  Other issues raised in the amended petition for post-conviction relief in which evidence was presented are not argued on appeal and thus are waived.  *Terry L. Hall v. State*, No. 01C01-9710-CC-00448, 1998 WL 670650, at *3 (Tenn. Crim. App. Sept. 30, 1998).  Thus, our summary of the testimony at the post-conviction hearing is limited to the evidence regarding the claims asserted on appeal.

Petitioner testified that she was the person who took her son to the hospital.  She stated that her son was not as severely ill as was described by witnesses called to testify by the State at trial.  She took him to the hospital after he vomited his medicine and then fell when she "tried to stand him up."

Petitioner testified that she discussed with trial counsel whether or not she should testify at trial.  She said that a decision was reached that she would not testify.  Petitioner recalled having an in-court discussion with the trial court concerning her decision to not testify at trial.  She stated that trial counsel advised her not to testify.

Petitioner believed afterwards that she should have testified at trial and provided her "part of the side of the story." Petitioner stated that she would not have been convicted if she had the opportunity to tell the jury that she did not know the severity of her son's condition, and she would have sought medical attention sooner if she had known. As to the day leading up to the victim being taken to the hospital, Petitioner described the situation:

> In that day, um, it was, he was just throwing up a lot. He wouldn't keep nothing down, but I kept giving him, I bought him Pedialyte and Tylenol and anti-nausea medicine, um, I thought he had the flu or a stomach virus and I made sure he didn't sleep or you know, I kept an eye on him. I kept him in my reach.

Petitioner claimed that she had called Vanderbilt hospital earlier in the day and was told "if his condition worsens to bring him that they could not give me any advice over the phone." She took her son with her to work to give him his medicine and watch his condition.

On cross-examination, Petitioner admitted that she had observed one bruise on the victim's arm, but had not seen multiple bruises on his back and his thighs. Petitioner added that her co-defendant's mother saw the victim at 2:30 p.m. and her boss and his family members saw the victim about 8:30 p.m. the night before he was taken to the hospital around 5:00 a.m.

Petitioner also acknowledged on cross-examination that it was her decision to not testify at trial with the advice from trial counsel. She and trial counsel had discussed the "pros and cons" of her testifying, and she advised the trial court during trial that based on her discussions with trial counsel, she chose not to testify.

Trial counsel was called to testify by the State. He testified that he was appointed to represent Petitioner about a year before the trial. He met with Petitioner on several occasions prior to trial. He went over all of the discovery with Petitioner, including the medical records. Due to her limited education, she had a difficult time understanding the information as written, but he did the best he could to describe the information to her.

Trial counsel testified that he met with Petitioner's two prior attorneys, consulted with an expert witness to understand medical records, and prepared Petitioner to testify. He was unable to contact Petitioner's employer. Trial counsel discussed with Petitioner her assertion that she was a victim of domestic violence by her co-defendant. Trial counsel felt that submitting proof that Petitioner exposed her child on a daily basis to a violent person "was a nonstarter for a strategy to seek a not guilty verdict."

Trial counsel acknowledged that he prepared pre-trial with Petitioner for her to testify at the trial. He initially believed she would be a good witness, but after three days of the State presenting its evidence, it was clear to trial counsel that Petitioner would be "outmatched" by the prosecutor. Thus, trial counsel concluded that Petitioner testifying would create "bigger problems than it would have resolved." Trial counsel discussed the pros and cons of testifying with Petitioner, and advised her not to testify. The discussion was based in part on Petitioner's being "out of her depth" regarding the medical testimony, what the proof showed, and how the proof was going to be evaluated by the jury. He testified that due to Petitioner's limited education, she did not understand the medical records relied upon by the State. Trial counsel reached the conclusion that "there is no way to properly prepare [Petitioner] for some of the testimony that we would have had to have rebutted in that trial and that is unfortunate." Petitioner made the decision to not testify.

Regarding the other witnesses who Petitioner claimed should have been called to testify at trial, as noted above, trial counsel was unable to contact Petitioner's employer. Also, counsel for the co-defendant unsuccessfully tried to contact Petitioner's employer. Even counsel for the co-defendant was unable to get co-defendant's mother to come to court to testify or even to cooperate by talking to the attorneys representing Petitioner and her son.

Trial counsel obtained the services of an expert to review the victim's medical records. Due to the fact that the expert's conclusions were consistent with the State's theory of the case, the expert was not called to testify at trial.

On cross-examination, trial counsel clarified his earlier testimony that there was no way to properly prepare Petitioner to successfully testify. He stated that the problem was *not* a lack of preparation on his part. Rather, it was a situation where there "could not have been enough preparation on [Petitioner's] part to get her to the educational level necessary to understand the medical testimony that was taking place and how to answer those questions in a way that would have been beneficial to her if she had taken the stand."

As to the co-defendant's mother's lack of cooperation with the attorneys, trial counsel acknowledged that the mother showed up the last day or two of the trial, but she still had nothing helpful to offer for Petitioner or the co-defendant.

The post-conviction court took the matter under advisement at the conclusion of the hearing. The post-conviction court entered an order denying relief. Relevant to the issues raised in this appeal, the post-conviction court made the following factual findings. Trial counsel worked with co-defendant's counsel to seek cooperation from co-defendant's mother, Ms. Ruiz, in order to corroborate Petitioner's version of the facts. They were unable to even communicate with Ms. Ruiz until the last day or so of the trial

when she did come to the courthouse. After being finally advised of what Ms. Ruiz's potential testimony would likely be, trial counsel concluded that Ms. Ruiz should not be called to testify. Trial counsel made efforts to contact Petitioner's employer, Mr. Ahmed, but trial counsel was unable to locate him with the information provided by Petitioner.

The post-conviction court also found that trial counsel worked with Petitioner to prepare her to testify, and he concluded that Petitioner, because of her limited understanding of the technical aspects of the case, would have been "outmatched" by the prosecutor. Accordingly, trial counsel advised Petitioner to not testify, and that Petitioner made the ultimate decision to not testify. The post-conviction court found that trial counsel did not refuse to call Petitioner as a witness and did not make the final decision that Petitioner would not testify. Further, Petitioner participated in a hearing conducted pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) and waived her right to testify.

Based upon these facts, the post-conviction court concluded that trial counsel's representation was not deficient. In addition, the post-conviction court concluded that even if trial counsel had been deficient by failing to call the co-defendant's mother, Ms. Ruiz, and Petitioner's employer and members of his family to testify, Petitioner failed to prove prejudice. Thus, the post-conviction court denied post-conviction relief.

**Analysis**

Petitioner contends that trial counsel rendered ineffective assistance of counsel because trial counsel failed to call Petitioner as a witness at trial and failed to call certain other witnesses to testify at trial. However, we find that the evidence does not preponderate against the post-conviction court's findings that Petitioner received effective assistance of counsel.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the

Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

First, Petitioner asserts that trial counsel failed to call her as a witness at trial because she could have testified about the measures that she took concerning the victim's care up until the time that he was taken to the hospital and that she did not intentionally delay in getting him medical care because "his symptoms did not appear to be as serious as the State alleged." Petitioner also contends that she could have testified that "once [the victim's] condition worsened, she did take immediate action and left work to seek medical attention for [the victim], and therefore did not neglect him." However, as stated above, the post-conviction court found that trial counsel worked with Petitioner to prepare her to testify. Trial counsel testified that Petitioner, because of her limited understanding of the technical aspects of the case, would have been "outmatched" by the prosecutor, and trial counsel concluded that Petitioner's testifying would create "bigger problems than it would have resolved." Trial counsel testified that he discussed the pros and cons of testifying with Petitioner, and he advised her not to testify. He said that Petitioner made the ultimate decision to not testify. Petitioner herself admitted at the post-conviction hearing that trial counsel discussed the pros and cons of testifying with her, and she advised the trial court during trial that based on her discussions with trial counsel, she chose not to testify. Therefore, the post-conviction court properly found that trial counsel did not refuse to call Petitioner as a witness and that trial counsel did not make the final decision that Petitioner would not testify. Furthermore, as pointed out by the post-conviction court, Petitioner waived her right to testify by participating in a *Momon* hearing. Petitioner is not entitled to relief on this ground.

Next, Petitioner contends that trial counsel failed to call "several witnesses that could have contradicted the State's assertions at trial that the victim would have been obviously seriously ill long before [Petitioner] took him to the hospital." She specifically mentions that Ms. Ruiz should have been called to testify. However, neither Ms. Ruiz nor any other witness who Petitioner claims should have testified at trial, testified at the post-conviction hearing. In cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner should present such witness at the post-conviction hearing. *Black v. State,* 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. *Id.* Therefore, the petitioner should "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington.*" *Id.* at 758. Because none of the witnesses testified at the post-conviction hearing, the Petitioner has failed to show that she was prejudiced by the failure of trial counsel to call any witnesses at trial. *See id.* at 757-58. The Petitioner is not entitled to relief on this ground.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's dismissal of the petition.

_____
THOMAS T. WOODALL, JUDGE